IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARY E. GAMMON,

        Plaintiff,

v.                                                           CIV 01-294 WJ/KBM

JO ANNE B. BARNHART,[1]
Commissioner of Social Security,

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Plaintiff's Motion to Reverse or Remand. *Doc. 9.* Plaintiff raises two claims – whether the Administrative Law Judge ("ALJ") erred in his credibility finding that Plaintiff exaggerated her symptoms and functional limitations, and whether he erred in not incorporating certain treating physician findings into the hypothetical questions posed to the vocational expert. Having carefully reviewed the administrative record, the briefs and relevant authorities, I recommend that the decision of the Commissioner be affirmed.

### *Standard of Review*

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992). My assessment is based on a review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d

---

[1] On November 9, 2001, Jo Anne B. Barnhart was sworn in as Commissioner of Social Security. In accordance with FED. R. CIV. P. 25(d)(1), Ms. Barnhart is substituted for William A. Halter as the Defendant in this action.

799, 800 (10th Cir. 1991). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994) (internal quotations and citations omitted).

### *Factual Background*

At the time of the hearing in February 1998, Plaintiff ("Gammon") was forty-seven and had previously worked for General Electric, where she tracked and distributed inventory and tools used in aircraft engine assembly. *Administrative Record* ("*Record*") at 70. She testified that she: suffered from chronic sinus infections for more than a decade, during which time she was constantly medicated with antibiotics and underwent two surgeries; also suffers from numerous allergies, for which she tried desensitization therapy once without success and declined to attempt again; and experiences asthma-like attacks when exposed to certain substances (such as dust while vacuuming or from wind storms, pollen while exercising or working outside in the yard, and smoke, perfumes, and other irritants in a work setting or public places). Gammon explained that when exposed to an irritant, her symptoms usually begin with a sinus infection headache, which progresses to coughing and then problems with breathing. *See id.* at 234-44.

Plaintiff's medical and work records show that in November 1994 she complained of an asthma attack due to her work area being "hot and stuffy." *Id.* at 143. In May 1995, a fire in Plaintiff's work area resulted in her treatment for smoke inhalation. *Id.* at 134-35. At the end of that month, Plaintiff complained of congestion and was scheduled for sinus surgery. *See id.* at 141-44 (5/30-31/95). In June 1995, she complained of an asthma attack. *Id.* at 139. In July 1995, sinus surgery was performed. Shortly thereafter, a physician, apparently either with General Electric or perhaps its disability insurer, spoke with the doctor who performed the

2

surgery. The surgeon permitted Plaintiff to return to work, but with the restrictions that she be permitted to work a sedentary job in a dust-free environment until August 7, 1995 and could then return to work with no restrictions. *Id.* at 198.

Despite the sinus surgery, Plaintiff was either off work for, or in the employer's medical facility complaining of, asthma attacks in October through November 1995 and in March 1996. *Id.* at 136-37. In June 1996, Dr. Richard Cohan (also apparently a General Electric physician or a physician connected with its disability insurer) talked Plaintiff's treating physician, Dr. Preston Matthews. According to Dr. Cohan's report, Dr. Matthews told him that he believed Plaintiff has asthma. Dr Matthews further related, however, that she "can work but it would have to be in an office environment which is air conditioned and where she does not have exposure to smoke or dust which would irritate the asthma." *Id.* at 197. Thereafter, Plaintiff took a medical retirement from General Electric. *Id.* at 236.

As for the frequency of her asthma attacks and how severely they debilitate her from any activity, Plaintiff testified that she can do her indoor housework except for vacuuming or dusting, and cannot wear a mask because she "really panic[s]" and claims she "can't breath[e] with the mask on." *Id.* at 234; *see also id.* at 236. She does not work in the yard anymore or bike or go to the park, but if she is having an "OK" day she does "try to get out and do a little bit of walking." *Id.* at 236. She testified that she has "bad days" "pretty much . . . all the time," *id.* at 236-37, is confined to her bed either with a headache or after an asthma attack "[p]retty much of the time" during each month and at least a couple of weeks each month, *id.* at 241, and "sometimes" paces the floor "all night long coughing," *id.* at 240. Gammon further indicated that she uses her home "breathing machine" two to three times a day for fifteen to twenty minutes

3

each time when she has bad days. *Id.* at 242-43. Thus, according to Plaintiff, anywhere from two weeks to all month, she is confined to bed, incapacitated and dependent on a breathing machine to ease her symptoms.

### *ALJ Properly Rejected Dr. Matthews' "Severity" Conclusion In His Credibility Determination*

Plaintiff insists that the ALJ erred in concluding that "Ms. Gammon's asthma does not render her unable to work as she alleges," *Doc. 10* at 4, because the ALJ's rejected Dr. Matthew's characterization of Plaintiff's asthma as "severe" on a post-hearing questionnaire. By the time of the hearing, Dr. Matthews had not yet fully complied with requests to submit all of Plaintiff's medical records. He did so after the hearing, including submission of partial answers to an "Asthma Questionnaire" that Plaintiff's counsel had given to him. In that questionnaire, Dr. Matthews described asthma's interference with Plaintiff's "energy/stamina" as "severe." *Id.* at 201. However, he did not answer the question whether "working indoors in an air-conditioned/heated environment would be sufficient to preclude acute asthmatic attacks in a vocational setting." *Id.* at 200.

The ALJ found that Plaintiff has the residual functional capacity for sedentary, unskilled work provided she is not exposed to pulmonary irritants and works in air conditioning. In so finding, he discounted Plaintiff's testimony of "symptoms and functional limitations" as exaggerated. As support for his finding, the ALJ relied the medical evidence in the record, including Dr. Matthews medical notes, the report of the doctor who spoke with Plaintiff's surgeon after the 1995 sinus surgery, and Dr. Cohan's report of his discussion with Dr. Matthews. The ALJ explained:

> the claimant says that she has asthma attacks one or two days per month after which she must stay in bed for about two weeks. However, her treating doctor indicates that her asthma has improved control and that it is considered stable. (Ex.7F)
>
> Her treating doctor indicates that over the last 12 years she has had about 50 examinations for sinus pain, chronic headaches and shortness of breath. She is diagnosed with chronic sinusitis and asthma. Her asthma has wheezing between attacks and interferes with her energy or stamina. She experiences jitteriness, insomnia and increased heart rate as side-effects from her medications. He considers her asthma "severe" [in the asthma questionnaire] (Exh. 9F). This does not establish that her asthma is of listings level severity, ***or that it prevents her from performing some level of work. As discussed above the doctor's contemporaneous notes indicate that the claimant's asthma is stable with improved control (Ex. 7F). I give more credence to the notes made after examining the claimant.***
>
> The claimant has had a residual functional capacity for a wide range of work with the limitations outlined in Exhibits 8E and 8F. She must avoid pulmonary irritants and work in an air conditioned environment.

*Record* at 19 (emphasis added).

Plaintiff argues that the ALJ erred in concluding that Ms. Gammon's asthma does not render her unable to work because Dr. Matthews' finding of "medical stability" is not "the equivalent of being able to do work." Plaintiff further contends that Gammon's prescribed steroid treatment indicates the severity of her symptoms. *Doc. 10* at 4, 5.

Generally, a treating physician's opinion generally is favored over that of a consulting physician and given controlling weight relative to the opinions of other physicians. *E.g., Reid v. Chater,* 71 F.3d 372, 374 (10th Cir. 1995). However, an ALJ may properly reject a treating physician opinion if it is unsupported by specific findings or is inconsistent with other objective evidence of record. *Castellano v. Sec. of Health & Hum. Servs.,* 26 F.3d 1027, 1029 (10th Cir.

5

1994); *see also Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir. 1987) (opinion properly rejected if it is "brief, conclusory, and unsupported by medical evidence"). That is the situation here.

The ALJ properly rejected Dr. Matthews' opinion that Plaintiff's asthma severely interferes with her "energy/stamina" as not supported by, and inconsistent with, his own treatment notes, which show that Plaintiff's asthma is controlled by medication. *E.g., Goatcher v. Dep't of Health & Hum. Servs.,* 52 F.3d 288, 290 (10th Cir. 1995). Dr. Matthews' medical records do not indicate that Plaintiff is bedridden to the degree she alleges, or that she has any work restrictions or functional limitations.

Indeed, there is medical evidence that Dr. Matthews told Dr. Cohan that Plaintiff *could work* in an air-conditioned and irritant-free environment. Nothing indicates that Plaintiff's condition worsened after that discussion. To the contrary, Dr. Matthews treatment notes show, as the ALJ found, that Plaintiff's asthma is controlled with medicine and is stable. Other medical evidence is consistent. *E.g., Record* at 157-62. Furthermore, the "severe interference" opinion on the questionnaire says nothing about the asthma's impact on Plaintiff's ability to work. Dr. Matthews rendered no opinion on Plaintiff's work limitations simply by failing to answer the question as to whether Plaintiff could work indoors.

Likewise, the ALJ did not err in assessing Plaintiff's testimony as not entirely credible. Gammon admitted that she has never been hospitalized for her asthma, and the medical evidence does not support the degree of limitations she alleges. Plaintiff correctly contends that Gammon's prior work record should be one of the factors the ALJ should consider in making his credibility determination. *Bean v. Chater,* 77 F.3d 1210, 1213 (10th Cir. 1995). However, unlike the proposition from the Second Circuit decision she cites, prior work record is but one of a number

6

of factors that can be relevant. *Id.* As the Tenth Circuit recently noted, "our opinion in *Kepler* [*v. Chater,* 68 F.3d 387 (10th Cir. 1995)] does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel,* 206 F.3d 1368, 1972 (10th Cir. 2000).

Here, the ALJ's credibility determination is specifically linked to the lack of objective medical evidence supporting Plaintiff's assertion that she is often bedridden for the better part of a month with her symptoms. Thus, the ALJ's credibility determination is "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler,* 68 F.3d at 391 (internal quotations and citations omitted); *see also Casias,* 933 F.2d at 801 (courts should "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.").

### *Vocational Expert Hypothetical*

In response to the ALJ's hypothetical question, the vocational expert testified that a person who must avoid even moderate exposure to irritants could work as a telephone solicitor from her home, which is a sedentary position and exists in sufficient numbers. *E.g., Record* at 20. Plaintiff asserts that the ALJ erred in not including Dr. Matthews' assessment of the asthma as "severe" in the hypothetical. For the reasons above, this finding was properly rejected. It is well settled that

> [t]he hypothetical question should include all--and only--those impairments borne out by the evidentiary record. . . . The VE relied on the limitations found by the ALJ, which are reflected in the RFC assessment form. The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the

7

record. . . . We conclude the ALJ did not err in relying on the VE's testimony.

*Bean,* 77 F.3d at 1214; *see also Decker v. Chater,* 86 F.3d 953, 955 (10th Cir. 1996); *Talley v. Sullivan,* 908 F.2d 585, 588 (10th Cir. 1990) (ALJ not bound by the vocational expert's opinion in response to a hypothetical question which includes impairments that are not accepted as true by the ALJ).

Plaintiff also argues that the ALJ erred in not including in the hypothetical question Dr. Matthew's findings that Plaintiff's medications cause side effects such as increased heart rate, the jitters, insomnia, and increased risk of osteoporosis. I will assume for the purposes of argument that these side effects somehow qualify as physical limitations on Plaintiff's ability to do work and are properly supported by medical records. Nevertheless, any such "error" does not undermine my confidence in the outcome of this case, particularly where Plaintiff herself testified that she could work in air-conditioning as long as no one wore perfume or "anything that had any smell to it." *Record* at 237; *see also Gay v. Sullivan,* 986 F.2d 1336, 1341 n.3 (10th Cir. 1993).

Wherefore,

**IT IS HEREBY RECOMMENDED** that Plaintiff's motion (*Doc. 9*) be denied and the decision of the Commissioner affirmed.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE